## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Allen R. Thomsen,<br>d/b/a AJ Sign Company,<br><br>      Plaintiff,<br><br>v.<br><br>Famous Dave's of America, Inc.,<br>a Minnesota corporation; Signworks<br>d/b/a Kurt W. Buggs' Signworks; and<br>Vomela Specialty Company, a<br>Minnesota corporation,<br><br>      Defendants. | Civil No. 07-1989 (DWF/RLE)<br><br><br><br>**MEMORANDUM**<br>**OPINION AND ORDER** |

Aaron W. Davis, Esq., Brian L. Stender, Esq., Eric H. Chadwick, Esq., and Casey A. Kniser, Esq., Patterson Thuente Skaar & Christensen, PA, counsel for Plaintiff.

David T. Schultz, Esq., JoLynn M. Markison, Esq., Emily M. Rome, Esq., and Keiko L. Sugisaka, Esq., Maslon Edelman Borman & Brand, LLP, counsel for Famous Dave's of America, Inc. and Signworks d/b/a Kurt W. Buggs' Signworks.

David T. Schultz, Esq., JoLynn M. Markison, Esq., Emily M. Rome, Esq., Keiko L. Sugisaka, Esq., Maslon Edelman Borman & Brand, LLP; and Craig S. Krummen, Esq., Winthrop & Weinstine, PA, counsel for Vomela Specialty Company.

## INTRODUCTION

This matter is currently before the Court on a Motion for Summary Judgment brought by Famous Dave's of America, Inc. ("Famous Dave's"), Signworks d/b/a Kurt W. Buggs' Signworks, and Vomela Specialty Company (collectively referred to as "Defendants"). For the reasons stated below, the Court grants Defendants' motion.

## BACKGROUND

Famous Dave's is a chain of American barbeque restaurants. Dave Anderson is one of the founders of Famous Dave's. In 1995, Anderson contacted Allen Thomsen to discuss signs and décor to be used in the first Famous Dave's restaurant in the Linden Hills neighborhood of Minneapolis, Minnesota.[1] This restaurant was a "flagship" restaurant for what would become a national chain of restaurants. Anderson met with Thomsen in June 1995, at which time Anderson presented a four-page document containing his ideas for the restaurant. The "concept" provided in part for "[a] traditional roadside BBQ Shack" with an interior that "[f]eatures the look [and] feel of a typical roadside BBQ shack that could be found throughout middle America" with "collectible 'Americana' antiques [and] memorabilia" on the walls. (Decl. of David T. Schultz in Supp. of Defs.' Mot. for Summ. J. ("Schultz Decl.") ¶ 6, Ex. D (Dep. of Dave Thomsen ("Thomsen Dep.")) at 51, Ex. 7.)

After the initial meeting, Thomsen prepared conceptual drawings for the Linden Hills restaurant. Thomsen indicated on the drawings that they were his property and "not for reproduction." (Decl. of Alan R. Thomsen ("Thomsen Decl."), ¶ 2, Ex. A.) After the drawings were approved by Anderson, Thomsen designed décor and signage for the

---

[1]  Anderson had observed Thomsen's design work at East Side Mario's, a restaurant in Minnetonka, Minnesota.

"shack" theme of the Linden Hills' restaurant.[2] After working on the Linden Hills restaurant, Anderson asked Thomsen to work on a restaurant in Roseville, Minnesota, and specifically to recreate the "shack" theme. Thomsen's conceptual drawings for the Roseville restaurant included signs used in the Linden Hills' restaurant as well as new designs. By October 2001, Famous Dave's opened at least thirty-six restaurants, both company-owned and franchise-operated. Thomsen painted the signs for roughly twenty of these restaurants, including the "Blues Club" format of the Calhoun Square, Minneapolis location; the "Lodge" format of the Minnetonka, Minnesota restaurant; and the first franchise-operated restaurant in Burnsville, Minnesota.

At some point during the expansion, Famous Dave's asked Thomsen to create twenty to thirty-five sign packages for inventory. On November 18, 1997, Thomsen sent a letter to Mark Payne, a representative of Famous Dave's:

> At the request of Famous Dave's of America, AJ Signs will produce and have in inventory 20-35 of each of the signs that are part of the FAMOUS DAVE'S PERSONALIZED SIGN PACKAGE. These signs are used for decor pieces in the Famous Dave's BBQ restaurants.
>
> These signs are produced by AJ Signs solely at the request of Famous Dave's. If for a reason or no reason Famous Dave's would find a new sign vendor, change their theme or simply not need this inventory, Famous Dave's of America is responsible for the purchase of all of the inventory that AJ Signs has stocked as part of this package. The responsibility would be for the retail prices established as of this date.

(Thomsen Dep. Ex. 9.)

---

[2] Anderson hired Thomsen to paint signs for the Linden Hills restaurant without a written contract.

In 2001, Thomsen was working on a restaurant in the Wisconsin Dells. At that time, a Famous Dave's employee who was designing a restaurant in Champaign, Illinois, told Thomsen that he intended to incorporate décor ideas from the Wisconsin Dells restaurant into the design of the Champaign, Illinois restaurant. (Thomsen Dep. at 6-7.) Soon thereafter, Thomsen claimed copyright ownership of signs he had painted for Famous Dave's, including all copyrights at issue in the present suit. Thomsen objected to the replication of designs and signage that he worked on, registered copyrights for signs he had painted for Famous Dave's, and retained an attorney. Thomsen's attorney then sent Famous Dave's a cease-and-desist letter.

Anderson and Thomsen eventually settled the 2001 dispute and entered into a settlement agreement dated October 4, 2001 (the "Settlement Agreement"). The Settlement Agreement was negotiated and entered into without the participation of attorneys. The Settlement Agreement provides in significant part:[3]

[Paragraph 2]

[Famous Dave's] will sit down with Ken Miller and other architectural design firms and explain the nature of this agreement so there are no misunderstanding [sic] going forward regarding the nature of [Thomsen's] concerns regarding the proprietary nature of his work when it comes to original concept designs and that they are not to be copied or duplicated.

---

[3]   The paragraphs in the Settlement Agreement are unnumbered in the original. The Court uses sequential numerical paragraph numbers 1 through 16 in brackets for ease of reference.

[Paragraph 3]

[Famous Dave's] will use best efforts to explain to all existing franchise owners and future franchise owners the proprietary nature of [Thomsen's] design work and that they are not to be copied or duplicated.

[Paragraph 4]

[Famous Dave's] will guarantee that there are no present attempts to duplicate [Thomsen's] designs and further agrees that they will use best efforts to assess and make changes now if there are.  ([Famous Dave's] feels this is not the case)

[Paragraph 5]

When [Famous Dave's] uses pictures of [Thomsen's] work in company publications, [Famous Dave's] will clearly mark them as [Thomsen's] work and understands that [Famous Dave's] has [Thomsen's] permission to do so.

[Paragraph 6]

[Famous Dave's] agrees to respect [Thomsen's] creative architectural/décor designs for Sioux Falls, Burnsville, Crosslake, and Wisconsin Dells.  The company further agrees to identify these particular restaurants as "signature restaurant designs" created by [Thomsen's] company and will use best efforts to advise all future franchise operators and their architects of the proprietary and copyright nature of these architectural/décor concepts as solely provided by [Thomsen].

This includes all future stores that [Thomsen] designs, develops, or decors.

[Paragraph 7]

As long as [Famous Dave's] and [Thomsen] are in good standing, [Famous Dave's] will provide good recommendation to all future franchise operators . . . .

[Paragraph 8]

5

[Famous Dave's] will explain that [Thomsen] does more then [sic] just paint signs. [Famous Dave's] will explain to all future operators the nature of [Thomsen's] design/décor services that he provides a "turn-key" service . . . .

[Paragraph 9]

In return, [Thomsen] is releasing all copyright, proprietary design and sign work to [Famous Dave's] in all other restaurants that he has worked on with the exception of Sioux Falls, Burnsville, Crosslake, and Wisconsin Dells. This does not preclude [Thomsen] from producing or manufacturing these signs for Famous Dave's.

. . . .

[Paragraph 11]

[Famous Dave's] understands that [Thomsen] was squeezed out of design fees of two recently completed restaurants. Both parties recognize that Famous Dave's cannot be held liable for 3rd party transactions between Ken Miller or other 3rd party architects and [Thomsen]; but in the spirit of getting this settled, [Famous Dave's] will make a one-time payment of $15,000 to cover [Thomsen's] fees.

. . .

[Paragraph 14]

In the spirit of settlement [Famous Dave's] also agrees to reimburse [Thomsen] for his attorney's fees regarding this matter estimated between $5,000 and $8,000.

. . .

[Paragraph 16]

In return . . . [Thomsen] agrees that the company will be forgiven and that we are starting over with a clean slate and that [Thomsen] will not sue the company for any past infringements or disagreements. . . .

6

(Davis Decl. ¶ 24, Ex. W at ¶¶ 6-9, 11, 14, 16.) After entering into the Settlement Agreement, Thomsen participated in the design of several new restaurants, some of which Thomsen designated as "signature stores" under the Settlement Agreement.

Thomsen brought the current action on April 20, 2007, alleging copyright infringement, inducement to infringe, vicarious infringement, and conspiracy to infringe with respect to works that Thomsen created between 1995 and 2000. Thomsen also alleges that Famous Dave's breached the terms of the Settlement Agreement and seeks a declaration that the Settlement Agreement is ineffective.

## DISCUSSION

### I.  Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at

747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

### A. Copyright Infringement

Thomsen asserts numerous copyright infringement claims involving twenty separate copyrights. Defendants move for summary judgment on Thomsen's copyright infringement claims, asserting that they are barred by the terms of the Settlement Agreement. Defendants assert that the Settlement Agreement unambiguously transferred ownership of each of the copyrights at issue in this action to Famous Dave's and that Thomsen therefore cannot sue for infringement. In particular, Defendants assert that Thomsen assigned all copyrights for works that were created as of October 4, 2001, for Famous Dave's restaurants in locations other than Sioux Falls, Burnsville, Crosslake, and Wisconsin Dells. Defendants further assert that all of the copyrights at issue in this action are for works created prior to October 4, 2001, and for restaurants in locations other than Sioux Falls, Burnsville, Crosslake, and Wisconsin Dells. Defendants claim that by "releasing all copyright, proprietary design and sign work" in the disputed copyrights to Famous Dave's, Thomsen transferred any purported ownership in those copyrights to

Famous Dave's.[4]

Thomsen asserts that the Settlement Agreement did not unambiguously assign Thomsen's copyrights to Famous Dave's, that Thomsen is the sole author of the copyrighted works, and that Famous Dave's does not have an implied license to use Thomsen's copyrights. In particular, Thomsen asserts that the Settlement Agreement does not transfer ownership of any copyrights to Famous Dave's. Instead, Thomsen maintains that the Settlement Agreement only released Famous Dave's from infringement claims that could have been asserted in 2001 or before. Thomsen points out that the terms "assignment" or "transfer" are not used in the Settlement Agreement. Thomsen also claims that there was no payment for the alleged transfer of copyrights and that Defendants' proposed interpretation of the Settlement Agreement would not make economic sense and should be rejected. In addition, Thomsen asserts that the Settlement Agreement is ineffective because Famous Dave's failed to meet conditions precedent or because Famous Dave's breached the agreement.

The parties agree that Minnesota law governs the interpretation and enforcement of the Settlement Agreement. Under Minnesota law, the construction and effect to be

---

[4] In the alternative, Defendants assert that Thomsen's copyright infringement claims are barred by the doctrine of implied nonexclusive license, waiver, and abandonment; and that Defendants are entitled to summary judgment on all claims of infringement for signs containing Wilbur the Pig because it is a derivative work or jointly authored. Because the Court concludes that the copyrights at issue in this action were transferred to Famous Dave's via the Settlement Agreement, the Court does not reach Famous Dave's alternative arguments.

given language in a contract are questions of law for the Court unless the contract is ambiguous. *Brookfield Trade Center, Inc. v. County of Ramsey,* 584 N.W.2d 390, 394 (Minn. 1998); *Hydra-Mac, Inc. v. Onan Corp.,* 450 N.W.2d 913, 916-17 (Minn. 1990). Absent ambiguity, contract terms are to be given their plain and ordinary meaning. *Brookfield,* 584 N.W.2d at 394; *Knudsen v. Transp. Leasing/Contract, Inc.*, 672 N.W.2d 221, 223 (Minn. Ct. App. 2003). Contract provisions must be interpreted in the context of the entire contract. *Brookfield*, 584 N.W.2d at 394. Further, to transfer ownership of a copyright, there must be a writing signed by the owner. 17 U.S.C. § 204(a). The writing need not contain any particular words or phrases; rather the inquiry is to give effect to the intent of the parties, which must demonstrate a transfer of the copyright. *See Radio Television Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922, 926 (9th Cir. 1999); *see also* Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT, § 10.03[A][2] at 10-43.[5]

The Settlement Agreement sets out certain promises made by both Famous Dave's and Thomsen. In particular, in Paragraph 6 of the Settlement Agreement, Famous Dave's agreed to the following:

> [Famous Dave's] agrees to respect [Thomsen's] creative architectural/décor designs for Sioux Falls, Burnsville, Crosslake, and Wisconsin Dells. The company further agrees to identify these particular restaurants as "signature restaurant designs" created by [Thomsen's] company and will use best

---

[5] The writing "doesn't have to be the Magna Charta; a one-line pro forma statement will do." *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990).

> efforts to advise all future franchise operators and their architects of the proprietary and copyright nature of these architectural/décor concepts as solely provided by [Thomsen].
>
> This includes all future stores that [Thomsen] designs, develops, or decors.

(Davis Decl. ¶ 24, Ex. W at ¶ 6.) The language of Paragraph 6 indicates that Famous Dave's agreed to recognize that Thomsen held rights in two categories of designs—those that were created for four "signature restaurants"[6] and those arising from future design work (design work occurring after the date of the Settlement Agreement). The language of Paragraph 6 also plainly demonstrates that these two categories of designs constituted Thomsen's proprietary work.

Famous Dave's made additional promises that relate to the recognition of Thomsen's work.[7] For example, Famous Dave's promised to explain the proprietary nature of Thomsen's work to architectural design firms and existing and future franchise workers and to clearly mark pictures of Thomsen's works when used in company publications. (Davis Decl. ¶ 24, Ex. W at ¶¶ 2, 3, 5.) In addition, Famous Dave's guaranteed that there were no present attempts to duplicate Thomsen's designs. (*Id.* ¶ 4.) Reading the Settlement Agreement as a whole, these promises necessarily relate to the designs and works that Famous Dave's agreed to respect in Paragraph 6, namely

---

[6] The "signature restaurants" are those located in Sioux Falls, Burnsville, Crosslake, and Wisconsin Dells. (Davis Decl. ¶ 24, Ex. W at ¶ 6.)

[7] Thomsen asserts that the promises made by Famous Dave's in the Settlement Agreement are conditions precedent. (Third Am. Compl. ¶ 802). The Court finds no merit in this assertion.

"signature restaurant designs" and future designs, and not to Thomsen's work generally.[8]

In addition, based on the language of the Settlement Agreement, which provides that Famous Dave's will respect Thomsen's architectural/décor designs *for* the "signature restaurants," the Court concludes that "signature restaurant designs" constitute designs that were newly created for one of the four "signature restaurants" and does not include existing designs that were originally created for a non-signature restaurant and later used in a "signature restaurant."

In return for the promises made by Famous Dave's, Thomsen agreed to release "all copyright, proprietary design and sign work to [Famous Dave's] in all other restaurants that he has worked on with the exception of Sioux Falls, Burnsville, Crosslake, and Wisconsin Dells." (Davis Decl. ¶ 24, Ex. W at ¶ 9.) The language of this provision plainly provides that Thomsen transferred certain rights. The use of the word "release" explicitly demonstrates that Thomsen gave up legal rights to certain works and designs. The word "release" is defined as:

> 1.   . . . the act of giving up a right or claim to the person against whom it could have been enforced . . . 2. The relinquishment of concession of a

---

[8] As explained below with respect to Paragraph 9 of the Settlement Agreement, Thomsen transferred certain copyrights to Famous Dave's. It would be nonsensical to view Famous Dave's obligations under Paragraphs 2, 3, 4, or 5 as applying to Thomsen's work generally because this would then include copyrights that Famous Dave's owns. Instead, the promises made in these paragraphs pertain to Thomsen's proprietary work and designs as recognized in Paragraph 6 of the Settlement Agreement.

> right, title, or claim . . . 5. The act of conveying an estate or right to another, or of legally disposing of it . . . 6. A deed or document effecting a conveyance.

BLACK'S LAW DICTIONARY 1292 (7th ed. 2004). In addition, that Thomsen gave up rights to certain copyrighted works is further evidenced by the final sentence of Paragraph 9, which states: "This does not preclude [Thomsen] from producing or manufacturing these signs for Famous Dave's." This sentence demonstrates that Thomsen gave up his rights to certain works because it implies that Thomsen would need Famous Dave's permission to produce these signs going forward. This sentence has meaning only if Thomsen assigned his rights; if Thomsen had retained ownership, he would not need Famous Dave's permission to produce the signs and this clause would be meaningless.

In addition, the "release" provision in Paragraph 9 plainly applies to all copyrights for design and sign work created by Thomsen prior to the date of the settlement for any restaurant that is not a "signature restaurant" (hereinafter collectively referred to as "Existing, Non-Signature Works"). In Paragraph 9, Thomsen explicitly released copyrighted works created by Thomsen for all Famous Dave's restaurants *except* the "signature restaurants."[9]

There is no dispute that all of the copyrights at issue in this action were created prior to the date of the Settlement Agreement. In addition, Defendants submit that each

---

[9] This release is in harmony with other provisions of the Settlement Agreement. For example, Paragraph 6 provides that Thomsen will retain ownership of "signature restaurant designs," precisely the category of designs not included in the release.

of the disputed copyrights is a "design or sign work" that Thomsen created for restaurants other than the "signature restaurants." Thomsen has not asserted or put forth evidence that any of the disputed copyrights were newly created for a "signature restaurant." Therefore, each of the copyrights at issue in this action constitutes an Existing, Non-Signature Work. As such, ownership of all of the copyrights at issue here was transferred to Famous Dave's pursuant to Paragraph 9 of the Settlement Agreement.[10]

Thomsen asserts that the Settlement Agreement does not transfer ownership of copyrights but instead "speaks in terms of releasing past infringement claims and specifically contemplates lawsuits for infringements that might take place after the agreement was signed."[11] (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. at 20.) Thomsen claims that Paragraphs 3, 4, 5, and 16 of the Settlement Agreement show

---

[10]  Defendants assert that all of the copyrights at issue were used prior to the creation of the "signature restaurants," and therefore that they could not be "signature restaurant designs." Defendants, however, have not pointed the Court to record evidence to fully support this assertion. Even so, the lack of record evidence on this point is not material because Thomsen has failed to put forth evidence that the disputed copyrights were newly created for "signature restaurants."

[11]  Thomsen relies on several categories of extrinsic evidence, such as prior drafts of the Settlement Agreement and Thomsen's deposition testimony as to the meaning of the Settlement Agreement. Because the Court concludes that the Settlement Agreement is unambiguous on its face, the Court does not consider this evidence. *See Knudsen*, 672 N.W.2d at 223. In addition, Thomsen suggests that the Settlement Agreement is ambiguous because it was not drafted by attorneys and is "very informal." The Court rejects this suggestion.

that he retained ownership over the disputed copyrights. The Court disagrees. First, Paragraph 16 constitutes a release of past infringement claims. Thomsen's proposed construction of Paragraph 9 (as a release of past infringement claims) would render Paragraph 16 superfluous. Second, on its face, Paragraph 9 is not limited to the release of past infringement claims. The clause does not mention "lawsuits" or "infringement claims" but instead explicitly releases "all copyright, proprietary design and sign work." For the reasons discussed above, it is apparent that Paragraph 9 applies to all Existing, Non-Signature Works. Finally, the remaining provisions cited by Thomsen do not contradict the Court's interpretation of Paragraph 9 because they pertain to Thomsen's "signature restaurant designs" and any future copyrightable works by Thomsen.[12]

Thomsen also asserts that he was not paid specifically for the transfer of the disputed copyrights and therefore it is impossible to conclude that an assignment was intended as a matter or law. Thomsen maintains that if an assignment had been intended, there would have been some payment. The Settlement Agreement provided that Thomsen would receive $15,000 for being "squeezed out of design fees" for two restaurants and $5,000 to $8,000 for attorney fees. The fact that the Settlement Agreement did not expressly allocate an amount of money for the transfer of copyrights does not negate the fact that Thomsen received valuable consideration. First, the record demonstrates that the

---

[12] For example, because Thomsen did not assign his rights to the "signature restaurant designs" or future copyrights, Paragraphs 3 provides that Famous Dave's will
(Footnote Continued On Next Page)

attorney fees payment included costs associated with filing the copyright registrations. Second, there is additional consideration in the Settlement Agreement; for example, that Thomsen would own copyrights in "signature restaurant designs."

For the reasons stated above, the Court concludes that Thomsen's copyright infringement claims fail as a matter of law. Accordingly, the Court grants Defendants' motion as to these claims.

### B. Breach of Contract

Thomsen asserts a claim for declaratory judgment alleging that the Settlement Agreement is ineffective and a claim for breach of contract alleging that Famous Dave's breached several provisions of the Settlement Agreement. Specifically, Thomsen alleges that Famous Dave's "has not explained to all existing franchise-operated restaurants and future franchise owners the proprietary nature of [Thomsen's] design work"; "has used pictures of [Thomsen's] work in company publications and not market them as [Thomsen's] work"; "has not advised franchise-operated restaurants or their architects of the proprietary and copyright nature of [Thomsen's] architectural/décor concepts"; "did not provide a good recommendation of [Thomsen] to any future franchise operators"; "has not provided [Thomsen] the opportunity for additional sign work"; "has not kept [Thomsen] informed on a timely basis of the company's development process"; and has

---

(Footnote Continued From Previous Page)
explain to franchise owners that "signature restaurant designs" and any future copyrights are not to be duplicated.

"continued to use proprietary design and sign work of [Thomsen] . . . without authorization, permission, or license of [Thomsen]." (Third Am. Compl. ¶¶ 795-801.) Thomsen seeks damages, injunctive relief prohibiting enforcement of the Settlement Agreement, rescission of the Agreement,[13] and/or termination of the Agreement. Defendants have moved for summary judgment on all of Thomsen's breach of contract claims. In his opposition, Thomsen only addresses the alleged violations of Paragraphs 3 and 5. The Court therefore discusses only those Paragraphs.

Paragraph 3 of the Settlement Agreement requires Famous Dave's to "use its best efforts to explain to all existing . . . and future franchise owners the proprietary nature of [Thomsen's] design work and that they are not to be copied or duplicated." (Davis Decl. ¶ 24, Ex. W. at ¶ 3.) Thomsen asserts that there "is no evidence that *any* existing and future franchises were" instructed in accordance with Paragraph 3, that Famous Dave's design manual and other documents contain Thomsen's works without an instruction that the works are not to be copied, and that Famous Dave's requires that signage be duplicated in franchise stores. (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. at 12.) In support, Thomsen relies primarily on the statements of Mark Bartholomay, a Famous Dave's representative, made during a Rule 30(b)(6) deposition:

    Q:    What did you do to explain to all existing franchise owners and

---

[13] Famous Dave's moved for summary judgment, in part, on the grounds that rescission is not an available remedy in this case. Thomsen did not respond to this argument. The Court therefore concludes that Thomsen has conceded that rescission is not available.

>    future franchise owners the proprietary nature of Al's design work?
>
>    A.     I can honestly answer that nothing. It wasn't required. They
>    couldn't design their own restaurants. We designed them for them, so there
>    was -- I couldn't figure out why that paragraph was there, because it was
>    totally irrelevant. They designed their own restaurant, we would have
>    thrown them out of the system.

(Davis Decl. ¶ 25, Ex. X (Dep. of Mark Bartholomay) at 33.) This evidence, however, is insufficient to avoid summary judgment. Bartholomay's deposition testimony makes clear that Famous Dave's franchise owners did not have the authority to design their own restaurants and that such design decisions were controlled by Famous Dave's corporate division. (*Id*. at 35-36.) In addition, there is no evidence that Famous Dave's ever allowed its franchisees or any architectural firms to copy any "signature restaurant designs." Thus, Thomsen has failed to submit evidence that would establish the existence of a material breach of Paragraph 3 or damages for the alleged breach.

Paragraph 5 of the Settlement Agreement requires Famous Dave's to clearly mark pictures of Thomsen's work when those pictures are used in company publications. Thomsen asserts that pictures of Thomsen's copyrighted works have appeared in Famous Dave's publications without being clearly marked as Thomsen's. In light of the Court's conclusions with respect to Thomsen's copyright claims, the Court notes that Thomsen has not pointed to record evidence that any of the pictures that appeared in company publications are of "signature restaurant designs" or designs created after the date of the Settlement Agreement. Therefore, there is no evidence that Famous Dave's breached Paragraph 5. In addition, Thomsen has not submitted any evidence of damages with

respect to any alleged breach of Paragraph 5.

For the reasons stated above, the Court concludes that Thomsen's breach of contract and declaratory judgment claims fail as a matter of law.  Accordingly, the Court grants Defendants' motion as to these claims.

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment (Doc. No. 70) is **GRANTED**.

2. Thomsen's Third Amended Complaint (Doc. No. 44) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  February 17, 2009            s/Donovan W. Frank
                                     DONOVAN W. FRANK
                                     Judge of United States District Court